Yes, Your Honor, I am. If it pleases the Court, Your Honor, Chris Mason here on behalf of the appellant Larry Brown. If possible, I'd like to reserve two minutes for rebuttal, Your Honor. I'd like to start with a foundational proposition. I think it's an obvious one, but nonetheless one that helps guide our analysis in this matter. Arbitration is not the problem in the legal system. It's part of the solution. There's nothing inherently wrong with arbitration, and I think we have to dispel the notion that by arbitrating disputes, we're somehow stripping away or limiting remedies. That's not the case, and we live in a society in a legal culture where the members are very litigious. Somewhere between 250,000 to 300,000 civil cases are filed in the federal court every year. There are literally tens of millions of cases filed in the state courts. Litigation is expensive. It's time-consuming. It doesn't always get to the remedies that individuals are seeking because it is so expensive and because it is so time-consuming. This case actually represents that principle very clearly. This case was filed in 2016. It is now 2021. It is particularly significant that we just went through a pandemic that shut our courts down, limited the number of trials and legal actions, and now we face perhaps the largest backlog of cases we've ever faced as a country. Arbitration helps solve the problem. There's nothing wrong with it. This is indeed why the Federal Arbitration Act exists and why the Supreme Court repeatedly reaffirms the preference for arbitration. Waffle House, as a matter of fact, was one of the exceptions. It was an exception driven by a narrow analysis focused on a specific government agency. Had the Supreme Court intended to adopt a blanket rule applicable to every government agency, it could have done so. It chose not to and instead focused its analysis on the peculiarities of the EEOC, the particular agency that was involved in that particular situation. And I submit to the court that... I mean, is that right? I mean, our court system is set up that we decide the case before us and not other things. And so in deciding Waffle House, they decided the case before them, which had to do with a particular agency. So I'm not sure that it follows that because that's how our process works, that the reasoning in that case doesn't extend beyond the circumstances of that case, if it makes sense. Do you see my point? I see your exact point, Your Honor. And it's also the very reason, though, why I think appellate courts routinely recognize prior precedent and then evaluate the case before them and determine under the specific facts of the subsequent case, does the prior precedent apply. And that's exactly what I believe we're here to do today in the argument we submitted to the district court judge in this case, Your Honor. Because there's nothing in Waffle House that says we specifically limit this holding to the EEOC, right? To some extent it did. It explicitly said we are addressing the question of whether or not the EEOC, and that's how they specifically framed the question. They specifically referenced the EEOC in that determination and said, does the EEOC have to arbitrate where the underlying beneficial claimant signed an arbitration agreement? That's the question that was presented. That was the decision they issued. And there are pages of analysis in the Waffle House decision focused on the peculiarities of the EEOC. I don't think we can necessarily extend that decision to other agencies without evaluating how those agencies operate and the peculiarities of those agencies. What about the basic principle that arbitration is a product of agreement, right? And so a party that hasn't agreed to arbitrate can't be required to arbitrate. And so in Waffle House they said that the EEOC is not an assignee of the worker who signed the agreement. They don't need the worker's consent to bring the claim. They have their own claim and the EEOC hasn't agreed to arbitrate it. Why isn't that equally true of the Labor Department here? That's a very good question, Your Honor, and I think the Supreme Court was focused in on the fact that in that particular situation that was just one of many factors to evaluate. The Supreme Court didn't limit it to that issue. It could have been a very short opinion if that was the central issue. And had it chosen to ignore all the doctrines in the various federal courts recognizing privity and the relationship between an interested party who may not have personally signed the agreement but may have rights that come out of that agreement or conversely maybe pursuing rights on behalf of somebody who did sign the agreement. Those doctrines are very widely recognized. They have not been rejected. They have not been disavowed. And the Federal Arbitration Act does not in any way, shape, or form reject the concept of privity. That's why we see so many cases on the issue and the wide recognition that if there is somebody in privity who is pursuing a claim perhaps on behalf of somebody who signed the agreement, they're bound by that agreement as well. You say in privity. Privity is a very precise concept. Why do we have privity here? Because in part the Ninth Circuit has the Department of Labor when it pursues an FLSA claim is in privity with an individual claimant. That if the individual claimant has already received his recovery or vice versa the Department of Labor has received the recovery. That depends on the nature of the representation and the nature of the claim and the nature of the harm as to whether or not there's privity. I'm not sure privity extends here. We've got two parties. Obviously the Department of Labor is coming in on the side of one of them, but privity is a pretty precise concept and I'm not sure it's there. I hear what you're saying, Your Honor. I do want to point out for purposes of this analysis that recovery of damages very clearly by statute go to the individual aggrieved torpors. That's built right into the statutory scheme. It's in the statute. Even the Department of Labor recognized in its statement of the issue in its opening brief that it's focused in on, and I'll cite directly to the language used by the Secretary of Labor it recognized that the central issue, the question presented was whether the district court correctly concluded based on Supreme Court precedent whether the Secretary of Labor may not be compelled to arbitrate this enforcement action authorized under the FLSA that was brought on behalf of workers. It too recognizes these claims are indeed brought on behalf of workers. There's no other way really in my opinion around that. These claims wouldn't exist but for the workers. The remedy goes to the workers. None of the money that could be secured if the Department of Labor is successful in this case would be kept by the Department of Labor. It all goes to the workers. It's on behalf of the workers. I think for that very reason... This is a version of the question that I think Judge Miller was asking. Assume for a moment that the Department of Labor is trying to protect these workers whether they're properly characterized as employees or independent contractors, and the workers have obviously signed away their right to have a court decide the question of independent contractor or employee, but if the Department of Labor is trying to protect these workers, it may be trying to protect the workers from signing away the Department of Labor's right to have a court decide this question. I'm not sure that the fact that we have these two private parties that are going to arbitrate between themselves should bind the Department of Labor when it's coming in from really quite a different perspective. Well, and I appreciate that point and that question, Your Honor, but let me phrase it slightly a different way. If an individual worker had sold and assigned his right to a third party, that third party, I don't think we'd have any question, would be bound by that worker's arbitration agreement. And I don't think at all that a worker can strip away from the Department of Labor a claim merely by assigning it. I still think the Department of Labor can pursue it. I just think at the moment the money is not the aggrieved worker, but the assignee who received the promise or the agreement from the worker. But none of that, in my mind, changes the analysis that we are pursuing recovery for workers who signed arbitration agreements. And that's particularly acute in this case because the whole nature of the relationship established from day one is dependent on an agreement that includes an arbitration clause. Whether or not these workers are independent contractors, whether or not they're employees, all of that's going to be part of the fight and just, frankly, one of the threshold fights. Because the FLSA does not concern itself in awarding damages simply because somebody's mischaracterized. Not only do they have to be mischaracterized, they have to fail to receive minimum wage and they have to fail to receive overtime compensation. If I simply mischaracterize a worker but neither of those two factors are present, I haven't violated the FLSA. And it all depends on the worker. Let me try and put myself in the shoes of Congress as in setting up the authority of the Department of Labor to litigate these FSLA claims. We all understand that the distinction between independent contractor and employee is a very important distinction. It's being sort of discussed, fought over in many of different forums, federal law, state law. I mean, I live in California where it's a nonstop, centric litigation. I mean, we all know and recognize the importance of this. I'm reluctant to conclude without fairly strong evidence that the Congress would be willing to send such questions routinely to arbitrators upon private agreement by the parties because if they go to arbitrators, we're not going to get clear and binding authoritative statements of law. We're going to get arbitration decisions. And the only way we get genuinely established legal principles is through litigation in the courts. So I can see why Congress would be quite reluctant to allow these cases to be sent off to arbitration routinely whenever the employer can get the employees or the independent contractor to get the workers to sign an arbitration agreement. And I appreciate that, Your Honor. If I can point out two issues with respect and in response to that. Number one, the Supreme Court decided in ethic systems that workers can waive the right to pursue collective actions. And that was part of a statement by the Supreme Court that we recognize collective groups can pursue a claim. And there's a lot of power in doing that and including your exact point that it may make an important social statement of law and how it applies to those particular workers, but rejected that argument. And at the end of the day said, no, we're fine with you going to arbitration. So that's the history we're looking at with respect to the Supreme Court on the issue. Two, I agree with you that this issue, this issue of whether somebody is an independent contractor, an employee is in a very important way. I've dealt with it in over 20 years of practice, and all I have seen is oscillating back and forth on the standards. I've seen inconsistencies from one court to another on almost identical facts. You're probably familiar, Your Honor, with the Dynamex decision in California and the California Supreme Court. Less than two years later, the voters voted in an overwhelming majority to find that Uber and Lyft drivers are independent contractors, not employees, which to me seem very inconsistent with the California Supreme Court's analysis. That doesn't mean that the California Supreme Court got it wrong. It just means that the voters decided they wanted to change the law. I don't disagree, but it goes back to my point. When we're deciding this question of independent contractor status, I hate to say it, but all we're doing is adding to the cacophony of voices on the issue. We're not deciding anything concretely. We're going to make a decision that applies in the federal district court for the District of Arizona, maybe inconsistent with what the District Court in New York decides and the District of California decides. I say that because these cases are literally all over the map. There is no consistency on this issue. The central point for the individual worker is, am I going to get the money I think I'm entitled to? Well, these workers, and I'm not saying they're going to prevail, but they've been at this for five years and they have yet to have an answer. If this had gone to arbitration, I submit to the court this would have been done. It would have been done a long time ago. This is why we have to recognize the importance of arbitration. Or if you hadn't sought to compel arbitration and gone to court, they might get their money too. Listen, let's hear from the position pretty well in hand, and you've got some time. Thank you, Your Honor. Thank you very much, Your Honor. Good afternoon, Your Honors, and may it please the court. My name is Shelley Troman, and I represent the Secretary of Labor. The Secretary is not bound by any arbitration agreement between diligent and its delivery drivers. The FLSA gives the Secretary of Labor the independent authority to bring and the unilateral authority to control FLSA enforcement actions, and the Secretary has not agreed to arbitrate any of his claims. Therefore, any agreement between diligent and the delivery drivers does not bind the Secretary or otherwise limit the relief available to him in a judicial forum. In EEOC v. Waffle House, the court held that a private arbitration agreement between employee and employer did not preclude the EEOC from bringing its own Title VII enforcement action. That reasoning can and should be applied here to an FLSA enforcement action. Further, the Secretary does not act merely as a proxy or representative when he brings FLSA enforcement actions. Instead, the Secretary is acting in the public's interest. And finally, the Supreme Court has held that the pro-arbitration policy goals of the FAA do not require an agency to relinquish its statutory authority if it has not agreed to do so. It is undisputed that the Secretary has not agreed to relinquish his authority, and therefore he should not be compelled to arbitrate his claims. And for these reasons, I respectfully request that this Court affirm the decision of the District Court. Waffle House clearly stands for the proposition that a private arbitration agreement will not bind a government agency that has the independent authority to bring its own enforcement action, and where that action seeks to vindicate the public interest. FLSA enforcement actions have these varied characteristics. Thus, the reasoning in Waffle House can and should be applied to them. The Court in Waffle House focused its analysis on how the EEOC is the master of its own case, in that it had the independent authority to bring a claim, and it had a certain level of control over that claim that was independent from the employee. And the Secretary is similarly the master of his own case when he brings an FLSA claim. He does not need employees' consent to bring an action, just as the EEOC does not. The Secretary dictates the prayer for relief in an action, and when the Secretary files his complaint, it terminates employees' rights to bring their own claim on their own behalf. And I would actually argue that the Secretary exercises even greater independence in FLSA enforcement actions than the EEOC exercises in Title VII actions, because employees cannot even intervene in a Secretary of Labor action under the FLSA, demonstrating that the Secretary has complete control over the action, whereas in Title VII actions employees can actually intervene in the EEOC's case. And in addition to that, the Secretary has a wide latitude to investigate potential violations of the FLSA, in contrast to the EEOC, where the EEOC must wait for an employee to file a charge with the agency in order for the EEOC to be able to even investigate potential violations of the statute. The Secretary of Labor can independently initiate investigations and can independently file claims in court without ever waiting for a complaint by an employee. So the Secretary of Labor's case is not linked in any way to a charge brought by an employee. And while it is true that the Title VII and FLSA statutory schemes share different characteristics in some way, they just simply don't differ where it matters. The differences are not material to the Waffle House analysis. Nowhere in Waffle House did the Court state that the fact that the EEOC was involved in every claim under the ADA, that that factor was dispositive. It was simply one of many factors that the Court analyzed in reaching its conclusion that the EEOC is the master of its own case. So all of the features of the FLSA's enforcement scheme make the Secretary the master of his own case just as the Title VII confers the rights of the EEOC to be the master of the EEOC's own case. So Waffle House should and can be applied here. And I want to address the issue of privity, which was discussed earlier. As I mentioned, the Secretary does not act merely as a representative or a proxy for employees, and is instead acting in the public's interest. And just because this Court has held that in a res judicata incident, or a case involving res judicata, that for purposes of res judicata, the Secretary can share privity with an employee, and that the Secretary cannot seek the same claim that the employee had already fully litigated himself, that does not mean that the Secretary is somehow in privity with every employee that he brings a claim on behalf of. And yes, while it is true that the Secretary or that the employees will ultimately benefit from a claim brought by the Secretary, a suit brought by the Secretary is in the public interest, notwithstanding that fact. And I would also just like to point out that the Court in Waffle House explicitly addressed the issue of res judicata, which brings in this idea of privity, and stated that just because ordinary principles of res judicata might apply to the EEOC's claim, that does not render the EEOC a mere proxy or representative for the employees. So, I'd also like to address the pro-arbitration policy goals of the FAA, and just reiterate that they do not extend to situations where a party has not agreed to arbitrate. The purpose of the FAA was to place arbitration agreements on equal footing with other contracts, but arbitration is strictly a matter of consent, so if a party has not agreed to arbitrate, there is no pro-arbitration policy goal favoring arbitration. And I'd like to point out a little bit about the case law that Mr. Mason brought up in his argument and in his briefs concerning EPIC systems and Concepcion, which were decided subsequent to Waffle House. And he argues that they somehow limit the reach of Waffle House, and that Waffle House should only be applied to EEOC claims. The Supreme Court has not explicitly or implicitly overturned Waffle House or otherwise limited its holding. Those cases, Concepcion and EPIC systems, both concerned employees challenging the validity of a class action waiver, and they do not involve government agencies. The decisions don't cite to Waffle House, which is not surprising given the fact that they involve two private parties who would agree to arbitrate. And while some view these decisions as maybe evidence of the fact that the court might be trending towards favoring arbitration, they didn't overturn or limit the principle in Waffle House. And instead, these decisions actually reiterated the principle that arbitration agreements must be enforced according to their terms. And I think requiring the Secretary to arbitrate, particularly in this case, would not only contravene the principle that arbitration agreements should be enforced according to their terms, it would create an untenable situation that also contravenes the overarching purpose of arbitration, which was discussed a little bit earlier, which is to have a streamlined, low-cost alternative to litigation. In this case, for example, if the Secretary were compelled to arbitrate, on one hand, that would mean that private parties then have the ability to waive an agency's statutory authority. But on the other hand, it would mean that the Secretary would perhaps be required to arbitrate on an individual basis, since the arbitration agreements at issue do not permit collective actions. So I can't imagine that Congress had this scenario in mind when it enacted the FAA or the FLSA. It would be certainly a waste of public resources and would not and it is not consistent with the goals of the FAA or the FLSA. And of course, I'd like to just mention that the Secretary is not arguing that Waffle House presented this blanket exemption to all government agencies, that all government agencies would never be bound by an arbitration agreement. We're simply arguing that here, in this instance, the Secretary of Labor shares the relevant characteristics of the EEOC, and thus the reasoning of that case should and can be applied here. And so, I will briefly conclude if there are no questions. No, so far so good. So, just as I mentioned, the reasoning in Waffle House can and should be applied here. There are simply no material differences between the EEOC's authority under Title VII and the Secretary's authority under the FLSA that would warrant reaching a different conclusion. The Secretary should not be compelled to arbitrate. And for these reasons, I respectfully request that this Court affirm the decision of the District Court. Thank you. Mr. Mason, you've saved some time. Thank you very much, Your Honor. I did want to point out in the Epic Systems case, the government was actually a party. The National Labor Relations Board was a party in the case. And notwithstanding its argument that the NLRB governs when collective actions can and cannot be pursued, the Supreme Court ruled in favor of arbitration and said, no, the NLRB doesn't get to dictate that collective action waivers are enforceable. I also want to point out to the Court, if I may, there are really three crucial distinctions. And this is brief, but I want to point out to them very quickly. Number one, the EEOC and DOL are very different because the EEOC is inherently involved in every discrimination claim brought under federal statute. No claim may proceed without the EEOC passing judgment on it first. It has more authority in that situation. And I'm not saying the EEOC has more power or less power than the Department of Labor. I'm saying it has more involved input in those specific claims inherently than the Department of Labor has in FLSA claims, which claimants can pursue on their own without ever alerting the Department of Labor. Two, the power of punitive damages was an important aspect of the Supreme Court's assessment in Waffle House. It was very crucial. It recognized that publication of punitive damages sent a message to other employers. We don't have that in this case. The Department of Labor cannot pursue punitive damages in these FLSA cases. And third, I would submit to the Court that the public interest in thwarting discrimination, which if you look at what's happened in this society over the last 12 months, discrimination is a reality that our society is very concerned about. And the public interest in publishing and making evident those cases, to me, far surpasses the question of whether a driver is an individual. And those individual drivers who may claim that they were underpaid and owed $300 or $400, their interest is in getting the money quickly, not going through five years of litigation. I also want to point out to the Court, if I may, that the Supreme Court has very, very routinely recognized special exceptions. I'd cite for the Court the baseball exception to the antitrust laws. You are over time, so if you'd like to sum up. Thank you very much. For these reasons, we do think the Supreme Court's analysis was on point in a blanket ruling that it applies to any agency automatically assumes that every agency is going to be exempt from arbitration agreements. I think that these require an individualized analysis. Thank you very much for your time. Thank both sides for your helpful arguments. Scalia v. Brown, submitted for decision. Thank you. One remaining case. CDK Global versus I always have trouble pronouncing. It's Branovich. I hope I've got that right.
judges: W. Fletcher, Miller, Hunsaker